Andrew R. Muehlbauer, Esq.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD**
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
andrew@mlolegal.com

[Additional counsel on signature block]

**U.S. DISTRICT COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| CHARVI SHAH, derivatively on behalf of RICHTECH ROBOTICS INC.,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE HUANG, MICHAEL HUANG, SAUL FACTOR, STEPHEN MARKSCHEID, JOHN SHIGLEY, and PHIL ZENG<br><br>Defendants,<br><br>and<br><br>RICHTECH ROBOTICS INC.,<br><br>Nominal Defendant. | Civil Action No. 2:26-cv-1273<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

1. Plaintiff Charvi Shah ("Plaintiff"), by and through her attorneys, hereby submits this Shareholder Derivative Complaint (the "Complaint") for the benefit of Nominal Defendant Richtech Robotics Inc. ("Richtech" or the "Company"), against current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and unjust enrichment. Plaintiff alleges the

following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, filings with the United States Securities and Exchange Commission ("SEC"), press releases published by and regarding Richtech, legal filings, news reports, securities analysts' reports about the Company, filings in the securities class action captioned *Diez v. Richtech Robotics Inc., et al*., Case No. 2:26-cv-00231 (D. Nev.) (the "Securities Class Action"), and other publicly available information.

**NATURE OF THE ACTION**

2. Richtech describes itself as a "robotics and artificial intelligence ("AI") technology company focused on developing advanced embodied AI systems that aims to improve the efficiency and productivity of U.S. businesses."

3. On January 27, 2026, at 08:00 ET, Richtech issued a press release entitled "Richtech Robotics Collaborates with Microsoft to Advance Agentic AI in Real-World Robotics Applications" (the "Press Release").

4. The Press Release contained the subheading "***[j]oint engineering effort*** *with Microsoft AI Co-Innovation Labs enhances Richtech's ADAM robot and extends intelligent automation across physical environments*" (italicization in original).

5. On the material news discussed above, Richtech Class B common stock appreciated from a closing price of $3.81 on January 26, 2026, to a closing price of $5.51 on January 27, 2026, a 44.6% increase in share price.

6. Just hours later, on January 28, 2026 at 08:00 AM EST, Richtech issued a press release entitled "Richtech Robotics Announces $38.7 Million Private Placement Priced At-The-Market Under Nasdaq Rules." (the "Private Placement Announcement").

7. The problem was that none of this was true. On January 29, 2026, at 12:00 PM EST, Hunterbrook Media ("Hunterbrook") published an article entitled "Breaking: Microsoft Denies Partnership with Richtech Robotics" (the "Hunterbrook Article").

8. The Hunterbrook Article stated initially that after "Richtech [. . ] stock added more than $370 million in market cap on the announcement of a "collaboration" Tuesday, the company announced a dilutive fundraise the next morning. Microsoft tells [Hunterbrook] the engagement was a "standard" customer program with "no commercial element."" Further, "[t]his comes after Richtech missed its 10-K deadline, hampering its ability to raise money through at-the-market offerings."

9. On this news Richtech Class B common stock fell $1.06 per share, or 20.87%, to close at $4.02 on January 29, 2026. The following day, Richtech Class B common stock fell a further $0.44 per share, or 10.9%, to close at $3.58 on January 30, 2026.

10. Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

12. This Court has jurisdiction over each Defendant because her or she resides in this district or has sufficient minimum contacts with this district to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state, has consented to service in this state and its principal place of business is within this district.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides, or maintains offices, in this district, a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' (defined below) primary participation in the wrongful acts detailed herein and violations of fiduciary duties owed to the Company occurred in this district, and Individual Defendants have received substantial

compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

**PARTIES**

14. Plaintiff is a current shareholder of Richtech and has continuously held Richtech class B common stock since April 2025. Plaintiff is a citizen of Canada.

15. Nominal Defendant Richtech is a Nevada corporation with its principal executive offices located at 2975 Lincoln Road, Las Vegas, Nevada 8911542.

16. Defendant Wayne Huang ("W. Huang") is Richtech's founder and served as Chief Executive Officer ("CEO"). Upon information and belief Defendant W. Huang is a citizen of Nevada.

17. Defendant Michael Huang ("M. Huang") was Chief Financial Officer ("CFO") at all relevant times, and is also a founder. M. Huang and W. Huang are brothers. Upon information and believe Defendant M. Huang is a citizen of Nevada.

18. Defendant Saul Factor ("Factor") has served as a director of the Company since October 2023. Upon information and belief Factor is a citizen of Florida.

19. Defendant John Shigley ("Shigley") has served as a director of the Company since October 2023. Upon information and belief Factor is a citizen of Nevada.

20. Defendant Stephen Markscheid ("Markscheid") has served as a director of the Company since October 2023. Upon information and belief Markscheid is a citizen of Illinois.

21. Defendant Phil Zeng ("Zeng") has served as the Company's Chief Operating Office since 2020. Upon information and belief Zeng is a citizen of Nevada.

**THE DEFENDANTS' DUTIES**

22. By reason of their positions as officers, directors, and/or fiduciaries of Richtech, and because of their ability to control the business and corporate affairs of Richtech, the Individual Defendants owed the Company and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Richtech in a fair, just, honest and equitable manner.

23. Further, Defendants were and are required to act in furtherance of the best interests of Richtech and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest and benefit. Each director and officer of the Company owes to Richtech and its shareholders the fiduciary duty to exercise good faith and due diligence in the administration of the Company's affairs, and in the use and preservation of its property and assets, as well as the highest obligation of fair dealing.

24. Because of their positions of control and authority as directors and/or officers of Richtech, having knowledge of material non-public information regarding the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. To discharge their duties, the officers and directors of Richtech were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties the officers and directors of Richtech were required to, among other things:

a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner, and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public; and

c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

25. Pursuant to Richtech's, the purpose of the Audit Committee is to "to assist the Board in monitoring (1) the integrity of the annual, quarterly and other financial statements of the Company, (2) the independent auditor's qualifications and independence, (3) the performance of the Company's independent auditor and (4) the compliance by the Company with legal and regulatory requirements. The Audit Committee also shall review and approve all related party transactions."

26. The Audit Committee Charter lays out the following "Authority and Responsibilities" of the Audit Committee:

- Review and discuss with management and the independent auditor the annual audited financial statements, and recommend to the Board whether the audited financial statements should be included in the Company's Annual Reports on Form 10-K (or the annual report to stockholders if distributed prior to the filing of the Form 10-K).
- Discuss with management and the independent auditor, as appropriate, significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including:
    - any significant changes in the Company's selection or application of accounting principles;
    - all alternative treatments of financial information within U.S. generally accepted accounting principles ("GAAP") that have been discussed with management and the ramifications of the use of such alternative accounting principles;
    - any major issues as to the adequacy of the Company's internal controls and any special steps adopted in light of material control deficiencies; and
    - any material written communications between the independent auditor and management, such as any management letter or schedule of unadjusted differences.
- . Discuss with management the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures, including the Company's risk assessment and risk management policies.

27. The Audit Committee Charter also details the Audit Committee's "Compliance Oversight Responsibilities:

1. Obtain assurance from the independent auditor that Section 10A(b) of the Exchange Act has not been implicated.
2. Review and approve all related-party transactions.

3. Inquire and discuss with management the Company's compliance with applicable laws and regulations and with the Company's Code of Ethics in effect at such time, if any, and, where applicable, recommend policies and procedures for future compliance.

4. Establish procedures (which may be incorporated in the Company's Code of Ethics, in effect at such time, if any) for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or reports which raise material issues regarding the Company's financial statements or accounting policies.

5. Discuss with management and the independent auditor any correspondence with regulators or governmental agencies and any published reports that raise material issues regarding the Company's financial statements or accounting policies.

6. Discuss with the Company's General Counsel legal matters that may have a material impact on the financial statements or the Company's compliance policies.

7. Review and approve all payments made to the Company's officers and directors or its or their affiliates. Any payments made to members of the Audit Committee will be reviewed and approved by the Board, with the interested director or directors abstaining from such review and approval.

**SUBSTANTIVE ALLEGATIONS**

28. On January 27, 2026, at 08:00 ET, Richtech issued the Press Release, entitled "Richtech Robotics Collaborates with Microsoft to Advance Agentic AI in Real-World Robotics Applications."

29. The Press Release contained the subheading "***[j]oint engineering effort*** with Microsoft AI Co-Innovation Labs enhances Richtech's ADAM robot and extends intelligent automation across physical environments" (italicization in original).

30. The Press release further stated the following:

> [Richtech] t***oday announced a hands-on collaboration with Microsoft through the Microsoft AI Co-Innovation Labs to jointly develop and deploy agentic artificial intelligence capabilities in real-world robotic systems.***
>
> ***Through close collaboration between Richtech Robotics' engineering team and Microsoft's AI Co-Innovation Labs***, the companies worked together to enhance Richtech Robotics' ADAM robot with adaptive intelligence powered by Azure AI. The collaboration focused on applying vision, voice, and autonomous reasoning to

> physical environments, enabling robots to move beyond task execution and support more contextual, conversational, and operationally aware interactions.
>
> ***Richtech Robotics and Microsoft*** enhanced ADAM with additional layers of context awareness, allowing the robot to incorporate signals such as time of day, weather, and promotions, respond more naturally to customer preferences, and apply vision-based models to maintain speed and quality during peak demand. These capabilities also support operational awareness, including notifying staff of ingredient or equipment issues before disruptions occur. These capabilities are designed to support smoother workflows and more responsive customer interactions in retail environments.
>
> ***While ADAM serves as a flagship example, the collaboration demonstrates how agentic AI capabilities*** can be applied across a range of physical environments, including logistics, hospitality, manufacturing, and other operational settings where real-time perception, reasoning, and reliability are essential. By combining physical robotics with cloud-based AI models, Richtech Robotics can apply software-driven intelligence across its portfolio to improve operational visibility, service quality, and performance without requiring extensive new hardware investments.
>
> ***
>
> The collaboration underscores Richtech Robotics' continued investment in data-driven automation and physical AI, leveraging cloud intelligence, perception, and autonomous reasoning to improve performance across commercial and industrial applications.

31. he Press Release quoted Defendant Wayne Huang as saying that "[o]ur collaboration with Microsoft reflects a shared focus on applying advanced AI to practical, real-world use cases[.] By working closely with the Microsoft AI Co-Innovation Labs, our teams were able to jointly develop and deploy intelligent capabilities that strengthen reliability, enhance customer interactions, and support scalable automation across physical environments."

32. On the material news discussed above, Richtech Class B common stock appreciated from a closing price of $3.81 on January 26, 2026, to a closing price of $5.51 on January 27, 2026, a 44.6% increase in share price. Upon information and belief, Richtech fraudulently claimed that it had a collaborative relationship with Microsoft, when in fact it had none, in order to raise the price of its stock for a private placement.

33. Just hours later, on January 28, 2026 at 08:00 AM EST, Richtech issued the Private Placement Announcement entitled "Richtech Robotics Announces $38.7 Million Private Placement Priced At-The-Market Under Nasdaq Rules."

34. The Private Placement Announcement stated that Richtech had "entered into a definitive agreement with a fundamentally driven institutional investor for the purchase and sale of 8,500,000 shares of the Company's Class B common stock in a private placement priced at the market under Nasdaq rules." Further, the "private placement is expected to close on or about January 29, 2026, subject to the satisfaction of customary closing conditions."

**<u>The Truth is Revealed</u>**

35. On January 29, 2026, at 12:00 PM EST, Hunterbrook published the Hunterbrook Article entitled "Breaking: Microsoft Denies Partnership with Richtech Robotics."

36. The Hunterbrook Article stated initially that after "Richtech [. . ] stock added more than $370 million in market cap on the announcement of a "collaboration" Tuesday, the company announced a dilutive fundraise the next morning. Microsoft tells [Hunterbrook] the engagement was a "standard" customer program with "no commercial element."" Further, "[t]his comes after Richtech missed its 10-K deadline, hampering its ability to raise money through at-the-market offerings."

37. The Hunterbrook Article further stated:

> Shares Richtech Robotics ($RR) surged more than 40% on Tuesday after the company announced a "collaboration" with Microsoft through the tech giant's AI Co-Innovation Labs. On the back of that pump, the following morning, Richtech announced a $38 million dilutive fundraise.
>
> ***But Microsoft tells Hunterbrook Media that Richtech is just a customer.***

(Emphasis added).

38. The Hunterbrook Article quoted a Microsoft representative as saying the following:

> Richtech participated in an AI Co-Innovation Lab engagement, which is a standard customer engagement focused on exploring and prototyping AI solutions using Microsoft technologies[.] ***There is no commercial element in this lab engagement.***

(Emphasis added).

39. The Hunterbrook Article further stated:

> ***Specifically, Richtech appears to have participated in a program Microsoft describes on its website as being available to "any customers/partners looking to implement***

> ***Microsoft's AI tools,"*** including "startups." (You can apply right here — and who knows, maybe you, too, can add $370 million in market cap to your name! Expect a response in "3-5 business days.")
>
> ***
>
> This strikes a very different tone from Richtech's press release, which cited a "close collaboration" between Richtech and Microsoft.

(Emphasis added).

40. The Hunterbrook Article further stated the following:

> ***The market, at least, seemed to think this implied a meaningful relationship between the two companies — the day of the announcement, $RR saw its steepest daily percentage increase in market cap in over a year.*** But based on Microsoft's statement to Hunterbrook, ***no material partnership appears to exist***.
>
> ***And to the extent Richtech actually achieved anything with this press release, its signature accomplishment appears to have been convincing the market that an ordinary, complimentary customer training session amounted to some kind of partnership***. (Sherwood News, owned by Robinhood: "Richtech Robotics soars after announcing partnership with Microsoft." Benzinga: "Richtech Robotics Stock Surges On Microsoft AI Partnership." And so on.)
>
> ***In reality, Microsoft's AI Co-Innovation Labs are described on the company's website as offering "one-week long complimentary, personalized development sprints for engineering teams." In other words, the "collaboration" Richtech announced appears to be participation in a free prototyping program available to Microsoft customers — not a commercial partnership***.

(Emphasis added).

41. The Hunterbrook Article stated the following about Richtech's failure to file SEC documents on time, which relate to its need to use private placements to attract capital:

> The Microsoft announcement came just one week after Richtech finally filed its delayed 10-K with the SEC on January 20, 2026, even missing its extended deadline.
>
> Richtech's fiscal year ended September 30, 2025. As a smaller reporting company, it had until December 29 to file its annual report. Instead, the company filed an NT 10-K (notification of late filing), claiming "additional time is needed to finalize the financial statements." That extension seemingly granted Richtech until January 13 to file. The deadline came and went with no filing.
>
> Failing to file timely reports, as required by Nasdaq Listing Rule 5250(c)(1), triggers an automatic deficiency notice. Once Nasdaq's Listings Qualifications Department

> issues that notice — which may already have happened behind closed doors — Richtech has just four business days to publicly disclose its deficiency notice via an 8-K filing.
>
> A review of Richtech's SEC filings shows no such 8-K was filed between the January 13 deadline and the January 20 10-K filing. ***Did Richtech receive a deficiency notice and fail to disclose it? Richtech did not answer this question in its reply to Hunterbrook's request for comment.***

(Emphasis added).

42. The Hunterbrook Article stated the following about Richtech's private placement, referencing prior fraud allegations and discussing how the private placement announcement may have been timed to benefit institutional investors at the expense of retail:

> Even without the fraud allegations, Richtech's numbers are bleak.
>
> The 10-K filing included Richtech's financial figures, which reveal a cash-burning machine. Fiscal year 2025 revenue totaled $5.045 million, with a net loss of $15.754 million — nearly double the prior year's $8.14 million loss. After the Microsoft announcement, the company now has a market capitalization of more than $1 billion.
>
> Without substantial revenue, to fund its operations, Richtech has repeatedly diluted shareholders by raising money through the issuance of new shares. But missing its 10-K filing deadline limited its options to secure more cash.
>
> To use the Form S-3 process — the streamlined registration that enables fundraising approaches like shelf offerings and ATM programs — companies must have filed all required SEC reports on time for the preceding 12 months. SEC Rule 12b-25 allows a 15-day grace period for late filers, during which the filing is "deemed" timely. Richtech missed that deadline. The 10-K officially became delinquent, and barring some departure from standard policy, the company should have lost S-3 eligibility.
>
> ***That means Richtech cannot tap its shelf registration or ATM program until it has 12 consecutive months of timely filings — so the earliest it could regain eligibility is January 2027. For a company burning over $20 million a year on $5 million in revenue, losing easy access to capital markets may be an existential problem.***
>
> ***So Richtech found another way to raise money.***
>
> ***On Wednesday morning — one day after the Microsoft announcement sent shares soaring — Richtech announced a $38.7 million private placement, selling millions of shares to an institutional investor "priced at the market under Nasdaq rules."***

> Unlike ATM offerings, private placements under Regulation D don't require S-3 eligibility.
>
> ***The timing could be problematic. Under Nasdaq rules, the "Minimum Price" for a private placement is the lower of the closing price or trailing five-day average immediately preceding the signing of the binding agreement.*** We don't yet know when the agreement was signed — that will be disclosed in the 8-K filing.
>
> ***If the deal was signed after Monday's 44% surge, part of the pump would be baked into the Minimum Price calculation, allowing the company to raise capital at a higher price than would have been possible days earlier, while the investor would still be able to buy Richtech stock meaningfully below market price.***
>
> ***But if the deal was signed before the Microsoft announcement, it's even more striking: The institutional investor locked in shares at a price based on the pre-pump stock, and then the very next day, a "collaboration" announcement sent the stock soaring — meaning the institution is now sitting on immediate paper gains while retail investors bought in at the top.***
>
> ***The playbook, in other words, seems to be: Miss your 10-K deadline, limiting your ability to fundraise; announce a "close collaboration" that in reality appears to be a one-week program open to just about anybody; watch the stock surge 44%; then disclose a private placement the next morning***, allowing institutional investors to buy shares at a cheaper price than retail.
>
> We may never know what Richtech learned about software engineering at the Microsoft Innovation Lab. But what seems clear is these guys could teach a course of their own on financial engineering.

43. On this news Richtech Class B common stock fell $1.06 per share, or 20.87%, to close at $4.02 on January 29, 2026. The following day, Richtech Class B common stock fell a further $0.44 per share, or 10.9%, to close at $3.58 on January 30, 2026.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

44. Plaintiff brings this action derivatively in the right and for the benefit of Richtech to redress Defendants' breaches of fiduciary duty and other violations of law.

45. Plaintiff will adequately and fairly represent the interests of Richtech and its shareholders in enforcing and prosecuting its rights.

46. The Board currently consists of the following three directors: Defendants Factor, Markscheid, and Shigley.

47. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons.

48. Defendants Factor, Markscheid, and Shigley (the entire Board) serve on the Company's Audit Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, inter alia, legal and regulatory compliance. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

49. Defendants Factor, Markscheid, and Shigley (the entire Board), were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Directors to also adhere to the Company's standards of business conduct. Defendants Factor, Markscheid, and Shigley (the entire Board) violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Defendants Factor, Markscheid, and Shigley (the entire Board) violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

**COUNT I**

**<u>Against All Defendants for Breach of Fiduciary Duties</u>**

50. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

51. As alleged in detail herein, each of the Defendants violated and breached their fiduciary duties of loyalty and good faith by engaging in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their

fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls over the Company's financial reporting and, as a consequence, issuing or permitting the issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

52. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and omissions of material fact that failed to disclose, inter alia, that: (1) Richtech claimed that it had a collaborative and commercial relationship with Microsoft when it did not; and (2) as a result, Defendants' statements about Richtech's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

53. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

**COUNT II**

**<u>Against All Defendants for Unjust Enrichment</u>**

54. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Richtech.

56. Plaintiff, as a shareholder and representative of Richtech, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Richtech and that Plaintiff is a proper and adequate representative of the Company;

B. Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

C. Directing Richtech to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable law and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

D. Awarding to Richtech restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 24, 2026

Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD**

/s/ Andrew R. Muehlbauer
Andrew R. Muehlbauer
Nevada Bar No. 10161

7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
andrew@mlolegal.com

**THE WEISER LAW FIRM, P.C.**
JAMES M. FICARO
jficaro@weiserlawfirm.com
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: (610) 225-2677